**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GREAT NORTHERN INSURANCE COMPANY,**
**as subrogee of Felix Schoeller Technical Papers, Inc.,**
**and Schoeller Technical Papers, Inc.,**

                              **Plaintiff,**          **5:01-CV-0882**
            **vs.**                              **(NAM)(GJD)**

**CONSTAB POLYMER-CHEMIE GmbH &**
**CO., and CIBA SPEZIALITATENCHEMIE**
**LAMPERTHEIM GmbH,**

                              **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

Cozen & O'Connor                              Douglas B. Fox, Esq.
1900 Market Street
Philadelphia, Pennsylvania 19103
*Attorney for Plaintiff*

Gibbons P.C.                              Philip W. Crawford, Esq.
One Pennsylvania Plaza
37th Floor
New York, New York 10119-3701
*Attorney for Defendant*
*Constab Polymer-Chemie GmbH & Co.*

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

         Defendant Constab Polymer-Chemie GmbH & Co. (n/k/a Constab Additive Polymers

GmbH & Co. KG) (Constab) moves this Court for dismissal of plaintiff's complaint based upon:

(1) lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure

and failure to comply with due process; or, in the alternative, (2) based upon Rule 12(b)(3) of the

Federal Rules of Civil Procedure and *forum non conveniens*; or, in the alternative,  (3) lack of

jurisdiction due to a forum selection clause.  (Dkt. No. 60)  The plaintiff, Great Northern

Insurance Company (Great Northern) has opposed defendant's motion.  (Dkt. No. 63, 64)

## BACKGROUND

Familiarity with the factual history in the case is assumed based on this Court's previous

Memorandum-Decision and Order and the Summary Order of the Second Circuit.  *See Great*

*Northern Ins. Co. v. Constab*, 01-CV-0882, Dkt. No. 43 (Sept. 16, 2002) (Memorandum-Decision

and Order); *see also Great Northern Ins. Co. v. Constab*, No. 02-9199, Dkt. No. 54 (Sept. 19,

2003) (Summary Order).

In February 1993, defendant Constab, a German corporation with its principal place of

business in Germany, entered into a supply agreement ("Agreement") with Feliz Schoeller GmbH

& Co. KD (Schoeller-Germany), a German corporation.  The Agreement was negotiated in

Germany and is written entirely in German.  It specifies the place of its execution as Germany.

Pursuant to the Agreement, Constab agreed to "regularly suppl[y] products for the production of

photo papers" to Schoeller-Germany plants - including a plant located in Pulaski, New York.

Schoeller-Germany is the parent corporation of Felix Schoeller Technical Papers, Inc. and

Schoeller Technical Papers, Inc. (Schoeller-USA).  At that time, Schoeller-USA was in the

business of manufacturing photographic papers with their business operations located at 170

County Route 2A in Pulaski, New York.

Pursuant to the Agreement, the products shipped to Schoeller plants included Masterbatch

UV 1032 LD ("Masterbatch"), a chemical manufactured by Constab and used in the photographic

industry.  The Masterbatch shipped to Schoeller-USA included a chemical known as Chimassorb

944. Chimassorb 944 was manufactured, sold, supplied and/or distributed to Constab by Ciba

Spezialitatenchemie Lampertheim GmbH ("Ciba"). Ciba is a German corporation with its

principal place of business in Germany.

In June and July of 1998, Schoeller-USA sent two (2) separate purchase orders for

Masterbatch directly to Constab in Germany. (Fox Aff., Ex.A) (Dkt. No. 63) Pursuant to those

orders, Constab supplied Masterbatch to Schoeller-USA in New York. After delivery, an invoice

was sent directly from Constab in Germany to Schoeller-USA in New York. (Fox Aff., Ex. A)

(Dkt. No. 63) Constab admits that it sold, distributed and/or shipped quantities of Masterbatch to

Schoeller-USA in Pulaski, New York for use in the manufacture of photographic papers. (Am.

Ans.¶ 4) The parties disagree as to when the shipments began.

Plaintiff, Great Northern Insurance Company, issued an indemnity policy to Schoeller-

USA effective May 1, 1998 through May 1, 1999. In August of 1998, Schoeller-USA received

complaints from their customers that photographic papers sold and supplied were defective

causing "desensitized spots" rendering the paper commercially useless. As a result, Schoeller-

USA customers rejected the defective papers and caused Schoeller-USA to sustain damages in the

amount of $499,017.93.[1] Plaintiff Great Northern compensated Schoeller-USA pursuant to the

insurance policy and is now subrogated to the rights of its insured, Schoeller-USA. Plaintiff

claims that a defective shipment of Masterbatch from Constab was the cause of the defects. As a

result, plaintiff has set forth claims against Constab for indemnity, contribution, negligence,

breach of warranty, breach of contract, and strict products liability.

## PROCEDURAL HISTORY

---

[1] The record does not contain the identity or location of the "customer(s)" that allegedly rejected the
defective papers.

3

In March of 2002, defendants previously moved to dismiss the plaintiff's complaint. (Dkt. Nos. 25, 26, 29-34, 40).  Defendant Ciba moved for dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction, or, in the alternative, for dismissal pursuant to Rule 12(b)(6) for failure to state a claim. (Dkt. Nos. 25, 26, 29, 30, 40).  Defendant Constab moved for dismissal pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure based upon the lack of personal jurisdiction, or, in the alternative, pursuant to the doctrine of *forum non conveniens*. (Dkt. No. 31-34, 37-39).

By Memorandum-Decision and Order dated September 12, 2002, this Court granted defendants' motions finding that plaintiff did not establish personal jurisdiction over either defendant under New York's long arm statute, N.Y. C.P.L.R. §302(a). (Dkt. No. 43)  The Court held that plaintiff failed to demonstrate that the defendant Ciba expected or reasonably expected that its actions would have consequences in New York.  Similarly, the record did not establish that the defendant Constab transacted business in New York or "contracted to supply goods or services".

Plaintiff appealed from the portion of the Order dismissing the complaint as against Constab.[2] (Dkt. No. 48)  On September 19, 2003, the Second Circuit vacated and remanded in part for further proceedings.  *Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH & Co*., 75 Fed. Appx. 824, 827 (2d Cir. 2003) (Dkt. No. 54).   The Court held that the plaintiff established a prima facie case of jurisdiction under the "contracting to supply goods" prong of C.P.L.R. §302(a)(1).  *Great Northern Ins. Co.*, 75 Fed. Appx. at 826.  The Second Circuit rejected

---

[2] All claims against the defendant Ciba were dismissed in this Court's Memorandum-Decision and Order dated September 16, 2002.  No appeal was taken from that portion of the Decision.  In July of 2003, the parties entered into a voluntarily stipulation discontinuing all claims as against Ciba.  (Dkt. No. 53)

the defendant's contention that the "totality of the circumstances" (including the fact that the contract was executed in Germany, between two (2) German companies with the absence of any direct ties to New York) precluded the exercise of jurisdiction.  Indeed, the Court held that the totality of circumstances test was unnecessary because Constab shipped chemicals to New York pursuant to a supply contract which expressly provided for the regular delivery of products to a New York plant.  *Id*.  Under these facts, the Court found that Confab could be subject to jurisdiction under the "contracting to supply goods" prong C.P.L.R. §302.  *Id*.  The Circuit remanded the case for further proceedings "[b]ecause the District Court determined that it could not exercise personal jurisdiction over Constab," and thus "did not analyze whether the exercise of such jurisdiction would comport with federal due process."  *Great Northern Ins. Co.*, 75 Fed. Appx. at 826.

Following remand, this Court issued a discovery order mandating that the parties conduct jurisdictional discovery within ninety (90) days of May 25, 2006.  The Court further ordered that any motion for dismissal on jurisdictional grounds shall be filed by September 16, 2006. (Dkt. No. 57).  During the pendency of the appeal, Constab declared bankruptcy. (Defendant's Memorandum of Law at p. 2).  A German liquidator/trustee was assigned to the administration of the bankrupt company.[3]  Allianz Verisicherungs AG ("Allianz") is principally responsible for the administration and handling of the claim against the former Allianz insured, Constab.  All requests to the liquidator for information/documentation relative to this matter have been rejected. (Gall Cert., ¶ 5).  Therefore, despite the discovery order, defendant has failed to produce any

---

[3]  Defendants moving papers do not include an affidavit from the liquidator/trustee.

further information regarding the extent of sales by Constab to Schoeller in the State of New York or any discovery relative to resolving the jurisdictional dispute.

# DISCUSSION

## DUE PROCESS

Even if the exercise of jurisdiction under a state's long-arm statute is permissible as a matter of state law, "the court then must decide whether such exercise comports with the requisites of due process." *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)).  The exercise of personal jurisdiction over a nondomiciliary comports with the requirements of due process if "minimum contacts" exist between the defendant and the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  *See Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).  Where a plaintiff makes the threshold showing of minimum contacts required for the first test, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.  *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, 2004 WL 2199547, at *16 (S.D.N.Y. 2004).  The two prongs of the inquiry are interrelated, and thus, a weak showing of minimum contacts requires a stronger demonstration of reasonableness.  *Studio A. Entertainment, Inc. v. Direct Distrib*., LLC., 2007 WL 437703, at *3 (S.D.N.Y.  2007).

***Minimum Contacts***

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,'" *id.*, 417 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment), "the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Where a plaintiff such as Great Northern, seeks to assert "specific jurisdiction"[4] in New York over an out-of-state defendant who has not consented to suit here, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *see id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)), and the litigation results from alleged injuries that "arise out of or relate to" those activities." *Id.* (quoting *Helicopteros*, 466 U.S. at 414. "The foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 474 (quoting *World-Wide Volkswagon*, 444 U.S. at 297). This "minimum contacts" requirement ensures that a defendant is not subject to jurisdiction "solely as a result of random, fortuitous, or attenuated contacts." *Id.* at 475.

---

[4] "Specific" jurisdiction contrasts with "general" jurisdiction, pursuant to which "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 9 (1984).

Specific jurisdiction is properly exercised where the plaintiff shows that the defendant "purposefully availed" himself of the privilege of doing business in the forum state and the claim arises out of or relates to defendant's contacts with the forum state. *Kernan v. Kurtz-Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir. 1999) (citing *Burger King Corp.*, 471 U.S. at 472) (citations omitted). Thus "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers. *Burger King,* 471 U.S. at 473 (citing *World-Wide Volkswagen Corp.,supra*, 444 U.S., at 297-298). In analyzing whether a defendant has purposefully availed itself of the forum, the focus of a court's analysis should be on issues of voluntariness and foreseeability. *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F.Supp 427, 437 (S.D.N.Y. 1996).

The record establishes that Constab "purposefully availed itself" of the forum by negotiating and entering into a contract which provided for the delivery of a product to New York. The contract specifically provides, in part:

Specification and Supply Contract

Between:
>     Felix Schoeller GmbH & Co. KG
>     P.O. Box 3667, 4500 Osnabruck
>     - hereinafter Schoeller-

with its plants:
>     d)      Schoeller Technical Papers, Inc.
>             P.O. Box 250, Co. Rt. 2A
>             Pulaski, New York 13142-0250
and
>             Constab Polymner-Chemie GmbH & Co.
>             Mohnetal 16

8

W-4748 Ruthen
- hereinafter Constab -

(Dec. K. Walters, Ex. A)

The defendant admits that it sold, distributed and/or shipped quantities of Masterbatch UV 1032 LD to Pulaski, New York and that the parties specifically contracted for this delivery. Therefore, the shipment was not, as argued by Constab, "merely incidental" to the Agreement. Rather, the shipment of goods by Constab **was** the Agreeement.  Indeed, Constab concedes that Schoeller-USA faxed a purchase order to Germany and that Constab "fulfilled the purchase order pursuant to its Agreement."  Thereafter, Constab sent an invoice for materials shipped from Germany to New York directly to Schoeller's plant in Pulaski, rather than to Schoeller-Germany. Because defendant Constab contracted with a plant in New York for shipment of its chemicals/products directly to New York, and then billed that New York plant directly for its services, the Court finds that "minimum contacts" exist to support jurisdiction in this Court. Thus, Constab could reasonably have foreseen being "haled into" court in New York State for damage claims arising from shipment of the contracted for chemicals and products.  The plaintiff has established.

### Reasonableness

The import of the "reasonableness" inquiry varies inversely with the strength of the "minimum contacts" showing - a strong (or weak) showing by the plaintiff on "minimum contacts" reduces (or increases) the weight given to "reasonableness." *Burger King*, 471 U.S. at 477.  Accordingly, because plaintiff has established defendant Constab's minimum contacts with New York, Constab must show that an exercise of jurisdiction by this Court would nevertheless be unreasonable.  Whether it is "reasonable" to exercise jurisdiction in a particular case depends

9

on: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1027 (2d Cir. 1997) (quoting *Metro. Life v. Robertson-Ceco Corp*, 84 F.3d 560, 568 (2d Cir. 1996)).

### Burden on the Defendant

Constab argues that an undue burden will be imposed on it because the former defendant, Ciba, is not subject to jurisdiction in this forum and Constab will thus bear the expense of litigating claims in both Germany and New York.  Defendant's inability to implead potential third-party defendants in this forum favors dismissal, but it is not compelling.  *See Goodyear Tire Co. v. Germanischer Lloyd, Volkswagen de Mexico, S.A. v. Germanischer Lloyd*, 1991 WL 230622, at *4 (S.D.N.Y. 1991) (citing *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 379 (2d Cir.1972)) (benefits of impleader may be taken into account in deciding a *forum non conveniens* application).  With respect to a potential third party action, the key factor to be considered is the difference in legal issues between the parties.  *Olympic*, 462 F.2d at 379.  The claims need not be tried together if the difference in legal issues is such that a separate trial of the matters will be unlikely to produce inconsistent results.  *See Olympic*, 462 F.2d at 379.

In the case at bar, the legal issues between the plaintiff, defendant and any potential third party defendant are separate.  "Whatever claim the defendants might have against [third party defendants] for indemnity or contribution based on the defendants' alleged breach . . . would not involve the same issues as [plaintiff's] claim against the defendants, since the warranties were

made by the defendants, not by [third party defendants]." *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 343 (2d Cir. 1983); *see also Goodyear Tire*, 1991 WL 230622, at *4 (plaintiffs' actions against defendant based primarily upon allegations of negligence and defendant's liability, if any, for failure to discover defects is independent of the liability of other parties for creating those defects).  Plaintiff's action against Constab can be decided in this forum without Ciba as a defendant.  Thus, trial of the present action in this forum will not deprive defendant of its right to seek indemnification from Ciba in Germany.  *See Goodyear* Tire Co., 1991 WL 230622, at *4.

Constab further claims that it will sustain an undue burden with respect to availability of evidence and witnesses.  It is asserted that all witnesses and documents pertaining to the manufacture of the alleged defective product are in Germany.  However, the hardship of defending a lawsuit in a forum where obtaining access to witnesses and documents is more difficult, it does not provide a compelling reason for dismissal.  See Met. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 574 (2d Cir. 1996).  Moreover, even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago. " *Id.*   In any event, defendant Constab offers conflicting evidence concerning whether access to witnesses and documents will be a true hardship.

For example, Constab argues that the existence of documents in Germany and the need for translation is a factor to be considered in favor of dismissal.  However, Constab also submitted the Certification of Gerlinde Gall who is the Allianz claims manager for plaintiff's claim against Constab.  Ms. Gall certifies the following:

> I have come to learn that there are no current operations of Allianz' insured.  Assets of the company have been sold to third parties.
>
> I have contacted the liquidator/trustee for the bankrupt company and have solicited the assistance of the liquidator in locating documents and files.  I have also solicited the liquidator's assistance in defending the claim against Constab.
>
> All my requests to the liquidator for assistance have been rejected.  I have received no direction or advice from him as to document location, or other information which would be of assistance in the defense of this claim.

Thus, as evidenced by the sworn testimony of Ms. Gall, there is no non-testimonial proof in this matter because all requests for the production of this information have been "rejected." Consequently, the record contains conflicting evidence concerning whether access to documents or the challenges of document production will even be an issue during discovery in this case.

While it is true that some burden will be imposed upon defendant Constab if it is required to defend this action in New York, plaintiff would be similarly burdened if this matter were venued in another jurisdiction.  Based thereupon, these two factors balance and do not warrant dismissal.  *Excelsior Coll. v. Frye*, 306 F.Supp.2d 226, 229 (N.D.N.Y. 2004).

**Remaining Factors**

As to the remaining factors, Constab argues: 1) New York has no specific interest in adjudicating the dispute; 2) convenient relief may be obtained by the plaintiff in Germany; 3) litigation in New York will be a drain of judicial resources; and 4) policy considerations of both Germany and New York will be protected if the matter proceeds in Germany.

The Court disagrees.  As the home of Schoeller-USA, New York has an "unquestionable interest" in adjudicating the claims.  *Sea Tow Serv. Int'l, Inc. v. Pontin*, 472 F.Supp.2d 349, 362 (E.D.N.Y. 2007).  Plaintiff's interest in obtaining convenient and effective relief would be furthered by litigating this case in New York, where the Schoeller-USA plant is located and

12

where the company conducts business.  *See Int'l Healthcare Exch., Inc. v. Global Healthcare Exch. LLC*, 470 F.Supp.2d 345, 360 (S.D.N.Y. 2007) (plaintiff's interest in obtaining convenient and effective relief is furthered by maintaining her choice of venue).  Moreover, defendant fails to offer a persuasive "policy consideration" that would persuade  the Court against exercising jurisdiction in this case.  *Sea Tow*, 472 F.Supp.2d at 362.  Neither party has "suggested or shown that any substantive social policies would be furthered or undermined by permitting the case against [defendant] to go forward in New York."  *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 245 (2d Cir. 1999).  Therefore, this factor does not weigh in either party's favor.

In sum, because the aforementioned factors do not present a compelling case that the Court's exercise of personal jurisdiction over defendant in this case would be unreasonable, such exercise comports with the requirements of due process.  *Boehner v. Heise*, 410 F.Supp.2d 228, 240 (S.D.N.Y. 2006).  Viewing the evidence in the light most favorable to plaintiff, defendant Constab has failed to show that this case is "the 'exceptional situation' where exercise of jurisdiction is unreasonable even though minimum contacts are present."  *Sea Tow*, 472 F.Supp.2d at 362 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 130 (2d Cir.  2002).  Accordingly, defendant's motion to dismiss on this basis must be denied.

### FORUM SELECTION CLAUSE

Defendant asserts that the Agreement contains a Forum Selection Clause which warrants dismissal of the amended complaint.  Specifically, the parties to the contract (Schoeller-Germany and the defendant) agreed:

> "Place of performance is for delivery and payment Ruthen/Mohne even in the case of Franko-delivery.  In the case of CIF and C&F transactions the place of unloading is the place of performance.  Place of jurisdiction for all reciprocal claims and obligations is for all merchants Warstein [Germany], also for bills of exchange and check debts."

13

(Dec. Klaus Walter, Ex. A).  Defendant contends that plaintiff, as the insurer of Schoeller-USA, is bound by the terms of the Agreement negotiated between Constab and Schoeller-Germany. Defendant further contends that the aforementioned language constitutes a mandatory and unambiguous forum selection clause.

Determining whether to dismiss a claim based on a forum selection clause involves a multi-step analysis.  *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383 (2d 2007).  The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  *See id.* (citing D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).  The second step requires a court to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so.  *See id.* (citing *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994).

In the absence of direct communication of a forum-selection clause to a non-signatory, the non-signatory may be nevertheless bound by the clause if the non-signatory "is closely related to the dispute such that it becomes foreseeable that it will be bound." *Burrows Paper Corp. v. Moore & Assoc.*, 2007 WL 2089682, at *3 (N.D.N.Y. 2007) (quoting *Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.*, 975 F.Supp. 483, 485 (W.D.N.Y. 1997)) (internal quotation marks omitted).  "A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Rohrbaugh v. U.S. Mgmt, Inc*., 2007 WL 1965417, at *4 (E.D.N.Y. 1997)  (quoting *Lipcom v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998)).

Great Northern, as the insurer for Schoeller-USA, is subrogated to the rights of Schoeller-USA.  It is clearly established that "an insurer-subrogee stands in the shoes of its insured." *See Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992).  "The doctrine of equitable subrogation allows insurers . . . to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999).  Neither Great Northern nor Schoeller-USA are signatories to the Agreement.  However, the enforcement of the forum selection clause is clearly "foreseeable" given the relationships between the parties and the basis upon which plaintiff has commenced this suit.  Therefore, the Court finds that the forum selection clause may be invoked against plaintiff requiring an analysis of whether the clause is mandatory or permissive.

A mandatory forum selection clause grants exclusive jurisdiction to a selected forum and should control absent a strong showing that it should be set aside.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).  In contrast, "a permissive forum selection clause indicates the contracting parties' consent to resolve their dispute in a given forum, but does not require the dispute to be resolve in that forum." *Fireman's Fund McMgee Marine v. M/V Caroline*, 2004 WL 287663 at *3 (S.D.N.Y. 2004)).  A forum selection clause is mandatory if jurisdiction and venue are specified with mandatory or exclusive language. *John Boutari & Sons, Wine & Spirits, S.A. v. Attiki Imp. & Distribs., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994).  In *Boutari*, the Second Circuit held that "[t]he general rule in cases containing forum selection clauses is that [w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Boutari*, 22 F.3d at 52 (citations omitted); *see also City of New York v. Pullman Inc.*, 477 F.Supp 438, 442 n.11 (S.D.N.Y. 1979) (an agreement

conferring jurisdiction in one forum will not be interpreted as [e]xcluding jurisdiction elsewhere unless it contains specific language of exclusion"); *Hartford Fire Ins. Co. v. Novocargo USA Inc*., 156 F.Supp.2d 372, 375-376 (S.D.N.Y. 2001).

The forum selection clause at issue provides: "Place of jurisdiction for all reciprocal claims and obligations is for all merchants Warstein [Germany]." (Dec. K. Walter, Ex. A).  The contract language specifies  jurisdiction in Germany but does not designate the forum or venue by identifying a particular court.  Further, the contract does not contain specific language of exclusivity precluding jurisdiction in any other forum.  The language is extremely vague and does not clearly reflect the parties intent to make jurisdiction in Germany exclusive.  Based thereupon, the forum selection provision is properly construed as permissive but will be considered by this Court as one factor in favor of jurisdiction in Germany.  Based on the permissive rather than mandatory nature of the forum selection clause, normal *forum non conveniens* analysis is applicable.  *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d Cir. 1993).

### *FORUM NON CONVENIENS*

Defendant argues that New York is not a convenient forum requiring dismissal pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens.  Forum non conveniens* affords a court broad discretion to dismiss an action where adjudication in another forum "will best serve the convenience of the parties and the ends of justice."  *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527 (1947); *accord PT United Can Co. Ltd. v. Crown Cork & Seal Co. Inc.,* 138 F.3d 65, 73 (2d Cir. 1998).       The Second Circuit has outlined a three-step process in analyzing a motion for dismissal based upon *forum non conveniens*: (1) what degree of deference is properly accorded to the plaintiff's choice

of forum; (2) whether the alternative forum proposed by the defendant is adequate to adjudicate the parties' dispute; and (3) an analysis of the private and public interests implicated in the choice of forum. *Norex Petroleum Ltd. v. Access Indus.*, Inc., 416 F.3d 146, 153 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-73 (2d Cir. 2001)). As stated by the Supreme Court:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947).

***Deference to Plaintiff's Choice of Forum***

17

It is well settled that a plaintiff's choice of forum is entitled to substantial deference. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003). When reviewing a motion to dismiss for *forum non conveniens,* there is an assumption that the plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference. *Pollux Holding*, 329 F.3d at 71 (citing *Iragorri*, 274 F.3d at 70-71). The deference due to the plaintiff's choice varies depending upon the circumstances:

> The degree of deference to be accorded the plaintiff's choice of forum is not determinative of the final outcome; rather, it merely re-calibrates the scales for the remaining two steps of the analysis. "[T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing forum non conveniens dismissal." (citation omitted) Conversely, where less deference is due, "the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts."

> A "plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum." "The reason great deference is generally afforded a plaintiff's choice of its home forum 'is because it is presumed to be convenient.' " By contrast, the choice of a United States forum by a foreign plaintiff is entitled to less deference, for the presumption that the choice is convenient "is much less reasonable."

*In re Ski Train Fire In Kaprun Austria on November 11, 2000*, 2007 WL 1771582, at *3 (S.D.N.Y. 2007) (internal citations omitted). Based thereupon, the Court will afford the plaintiff's choice of forum herein a "high degree" of deference.

### Adequate Alternative Forum

An alternative forum is generally adequate and available when defendants are amenable to jurisdiction in that forum, unless "'the remedy offered by the other forum is clearly unsatisfactory.'" *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476-77 (2d Cir. 2002) (quoting *Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).  Constab argues that it "consents" to jurisdiction in Germany for claims raised in the complaint.  However, plaintiff Great Northern asserts that the statute of limitations may bar the action in Germany and further, that the "consent" expressed by Constab is improper since the German liquidator/trustee currently overseeing Constab's bankruptcy has not provided an affidavit with such consent.

The Second Circuit has held that a forum is unavailable for purposes of *forum non conveniens* when it would be impossible for a plaintiff to proceed with a suit there due to the availability of a meritorious statute of limitations defense. *See Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2nd Cir. 2001) ("[a]n adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum."); *see also Norex*, 416 F.3d at 159.  To reconcile this issue, the Court could condition dismissal on defendant's agreement to waive any statute of limitations defense that may arise under German law, and could retain jurisdiction in the event that the German courts refuse to accept jurisdiction over the case. *Manela v. Garantia Banking, Ltd.*, 940 F.Supp 584, 590 (S.D.N.Y. 1996); *see also Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 968 & n. 6 (2d Cir. 1980). Conditional dismissal obviates the need for extensive inquiry into foreign jurisdictional law, since if the foreign court refused to take jurisdiction, "plaintiff [would] still [be] protected by the conditional nature of the dismissal." *Calavo*, 632 F.2d at 968 (quoting *Schertenleib v. Traum*, 589 F.2d 1156, 1163 (2d Cir. 1978)).

Where a *forum non conveniens* analysis strongly favors dismissal, courts may impose conditions on dismissal in order to address lingering concerns that litigation in the foreign forum may nevertheless have a significant impact on the plaintiff's ability to seek redress.  *See*

*Henderson v. Metro. Bank & Trust Co.*, 470 F.Supp.2d 294, 304 (S.D.N.Y. 2006) (citing *Norex Petroleum*, 416 F.3d at 159-60).  Indeed, in *Henderson*, the Court held:

> [C]ourts must take measures, as part of their dismissals in *forum non conveniens* cases, to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts. Such measures often include agreements between the parties to litigate in another forum, to submit to service of process in that jurisdiction, to waive the assertion of any limitations defenses, to agree to discovery, and to agree to the enforceability of the foreign judgment.  Courts should also include a "return jurisdiction clause," which permits refiling in the United States if the defendant's proposed alternative forum turns out to be inadequate.

470 F.Supp.2d at 304 (citing *Accord Ingram Micro, Inc. v. Airoute Cargo Express*, 2001 WL 282696, at *7 (S.D.N.Y. 2001).  Thus, if the Court determines that Germany is the proper forum for this action, a conditional dismissal disposes of plaintiff's objection that the action could not be prosecuted there.

### Gilbert Factors

Turning to consider the private and public interest factors outlined by the Supreme Court in *Gilbert*, the Court notes that there is no forum which would be convenient for all parties and witnesses.  The private interest factors in this case include:  (1) location of evidence and witnesses; (2) the availability of process to compel attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) practical problems that make the trial of a case easy, expeditious, and inexpensive; and (5) enforceability of judgments.  *See Gilbert*, 330 U.S. at 508-09; *see also Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993).  Moreover, the public interest factors are: (1) the administrative problems which follow when litigation is added to existing heavy caseloads in

20

congested centers; (2) the imposition of jury duty; (3) the local interests; and (9) the difficulty

which arises when a forum must apply foreign choice of law rules and foreign law.  *Gilbert*, 330

U.S. at 508-09.

***Private Interest***

### Ease of Access to Sources of Proof

Defendant claims that documentary evidence necessary to try this case is located  in

Germany.  As discussed *supra*, the argument is unpersuasive and there is conflicting evidence in

the record concerning the availability of documents in any event.

### Compelling Production of Unwilling Witnesses/Cost of Obtaining Attendance of Willing Witnesses

While arguing that necessary witnesses are unavailable in the United States including

witnesses to the contract, scientists and other employees involved in the design and production of

the chemicals, Constab concedes that the identity and employ and/or control of these witnesses is

currently unknown.  In opposition, plaintiff asserts that all witnesses on the issue of damages are

located in the United States.  Plaintiff's arguments on this issue, however, are conclusory.  Great

Northern does not identify documents, delineate the names of any witnesses or the substance of

testimony such witnesses would provide.  *Reers v. Deutsche Bahn AG*, 320 F.Supp.2d 140, 161

(S.D.N.Y. 2004).  Undoubtedly, some party will bear the expense of obtaining the attendance of

willing witnesses, despite the venue.  However, the development of worldwide travel means that

"mere distance alone is not a sufficient basis on which to conclude that a forum is inconvenient."

*Bybee v. Oper der Standt Bonn*, 899 F.Supp 1217, 1233 (S.D.N.Y. 1995).

Plaintiff's complaint asserts causes of action including negligence, breach of contract,

breach of warranty and strict products liability.  The Agreement is the central point of this

litigation.   The Agreement was negotiated in Germany and the manufacturing and shipping of the alleged defective product was based in Germany.  Therefore, whatever breach may have occurred based upon the Agreement, occurred in Germany.  Under any theory of plaintiff's case, the critical witnesses are not those to the defective papers, but those involved in the transactions, formulation and manufacturing that resulted in the alleged defective product.  *See VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F.Supp.2d 377, 386 (S.D.N.Y. 2003).

It is clear that evidence and/or testimony from witnesses involved in the manufacturing of Masterbatch and/or Chimmasorb is necessary to this action.  The parties have recourse under the Hague Convention to compel depositions and document production in foreign countries.  However, the evidence the parties would be required to seek through the assistance of foreign courts would be extensive and the process of obtaining this evidence would be costly and time-consuming.  The massive inefficiency and inconvenience that this would create for the parties is all the more striking given the existence of an alternative forum where many of these problems would not arise.  *Reers*, 320 F.Supp.2d at 162; *Broad. Rights Int'l Corp. v. Societe du Tour de France, S.A.R.I.*, 675 F.Supp 1439, 1447 (S.D.N.Y. 1987) (testimony that must be obtained through the procedures established by the Hague Convention . . . is not a factor that would expedite the resolution of an action in New York).  The expense of live witness testimony at trial will be clearly be greater if the action remains in the United States.  Based thereupon, this factor weighs in favor of litigating the case in Germany.

### Enforceability of Judgments

The inability to enforce whatever judgment results in this forum supports *forum non conveniens* dismissal.  *In re Ski Train*, 2007 WL 1771582, at *7.   It is not clear that the German

courts would recognize an American judgment based on German law.  *See Stewart v. Adidas A.G.*, 1997 WL 218431, at *7 (S.D.N.Y. 1997).  Through further proceedings, the plaintiff may be successful in enforcing a judgment of this Court in Germany; however it is undisputed that plaintiff would have less difficulty enforcing a German judgment in Germany.  *NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale*, 1999 WL 39539, at *3 (S.D.N.Y. 1999).

The defendant's bankruptcy further complicates the issues of enforceability.  "American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Cunard Steamship Co. Ltd. v. Salen Reefer Services AB*, 773 F.2d 452, 458 (2d Cir. 1985).  Any judgment entered by a United States court would likely be worthless as the record does not contain any evidence to suggest that Constab has assets subject to attachment in the United States.  *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 379 (2d Cir. 1972).  American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings. *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987); *Cunard,* 773 F.2d at 452 (creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal.  Based on the foregoing, the *Gilbert* private interest factors weigh in support of dismissal on the basis of *forum non conveniens*.

***Public Interest***

### Local Interest and Jury Duty Imposition

The defendant maintains that Germany has a stronger interest in this case than New York.  However, "because the doctrine of *forum non conveniens* is used to choose between foreign and United States fora, rather than between different United States judicial districts, the appropriate

inquiry here is whether the United States as a whole, not just New York, has an interest in adjudicating the dispute." *Nat'l Union Fire Ins. Co. of Pittsburgh v. BP Amoco, P.L.C.*, 2003 WL 21180421, at *9 n. 8 (citing *DiRienzo v. Philip Serv. Corp.,* 294 F.3d 21, 32-33 (2d Cir. 2002)).

The respective interests of the United States and Germany balance and therefore, do not weigh in favor of dismissal of the complaint. The United States has an interest in this matter as the damage/injury occurred in the United States. The alleged defective product was utilized by a New York company for processing of photographic paper in New York. The paper was then sold to consumers in the United States who sustained injury within the United States. The plaintiff is a Minnesota corporation with its principal place of business in New Jersey. In contrast, Germany has an interest in this litigation relative to the liability issues. The basis of the lawsuit is the Agreement which was negotiated and executed in Germany. The manufacture of the chemicals alleged to be defective occurred in Germany. The defendant is currently entangled in bankruptcy proceedings in the German courts. Given the competing interests, this factor does not favor one jurisdiction over the other.

The interest in protecting jurors from sitting on cases with no relevance to their own community is an additional public consideration. *See NCA Holding Corp. v. Norddeutshe Landesbank Girozentrale*, 1999 WL 39539, at * 3 (S.D.N.Y 1999). However, as the jurisdictions have equal interests, this factors do not tip notably one way or another. Defendant argues that the dockets in the federal district courts favor adjudicating the matter in Germany. Plaintiff disputes this notion as the defendant has not offered any evidence to demonstrate that the congestion is any greater in New York than Germany. "[T]he Court of Appeals made clear that this consideration [court congestion] is not relevant within the Second Circuit as long as all judicial vacancies are

24

filled, resulting in a 'full complement of judges for the District. *See HSBC USA, Inc. v. Prosegur Paraguay, S.A.*, 2004 WL 2210283, at *2 n.1 (S.D.N.Y. 2004) (quoting *Guidi v. Inter-Continental Hotels Corp*. 224 F.3d 142, 145 n.7 (2d Cir. 2000)).

**Choice of law**

The need to apply foreign law is a factor that weighs in favor of dismissal. Defendant argues that German law applies to this matter. Plaintiff does not specifically dispute this statement but contends that the defendant has not demonstrated any nuances in German law that would prevent this court from ruling. Without conclusively resolving the conflict-of-law issue, it is reasonable to assume for purposes of this motion that the applicable law will be the law of Germany. *See Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127,129 (2d Cir. 1987). Plaintiff argues the action involves simple breach of warranty, products liability and contract action, but this is an oversimplification of the factual and legal analysis necessary in this matter. The basis of this lawsuit is a German agreement that was executed and written in German. Although this Court is able to apply German law when necessary, it makes no pretense that it could do so as knowledgeably or as efficiently as a German tribunal. *Bybee*, 899 F.Supp at 1223; *see e.g., Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 983 (2d Cir. 1993). The overwhelming German connections to this action, with specific attention to the bankruptcy issues, emphasize the fact that a German court would be much better equipped to apply German law and resolve this matter expeditiously.

## CONCLUSION

Litigation in the present venue would be inefficient for several reasons including, but not limited to, this Court's lack of jurisdiction over a potential third party defendant, the existence of

25

the forum selection clause, the difficulty enforcing a judgment obtained in this Court, the likely application of German law and the bankruptcy issues.  While the Court recognizes that the plaintiff, as a United States corporation, has a strong interest in ensuring that this action is resolved in the United States, the Court believes that Germany would be a more appropriate forum.

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss the plaintiff's amended complaint with prejudice pursuant to Rule 12(b)(2) and lack of due process is denied; and it is further

**ORDERED** that defendant's motion to dismiss the plaintiff's amended complaint with prejudice based upon the existence of a forum selection clause is denied; and it is further

**ORDERED** that defendant's motion to dismiss the plaintiff's amended complaint pursuant to Rule 12(b)(3) and *forum non conveniens* is conditionally granted subject to the following conditions:

(1)     Defendant must consent to suit in Germany;

(2)     Defendant must waive any statute of limitations defense(s) available under German law;

(3)     Should the German court not recognize the plaintiff's cause of action or decline to adjudicate the case, the defendant must consent to plaintiff's reinstitution of the lawsuit in the Northern District of New York without prejudice resulting from any statute of limitations bars.

**IT IS SO ORDERED.**

**Dated:  September 28, 2007**

Norman A. Mordue
Chief United States District Court Judge

26